FILED

DEC 0 3 2005

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By_____Deputy

James F. Vollintine
P.O. Box 113329
Anchorage, AK 99511-3329
(907)346-4446; Fax 346-4898
Email: jfv@alaska.com
Attorney for Plaintiff

Daniel M. Duame
4000 Old Seward Highway, Suite 202
Anchorage, AK 99503
(907)563-2146; Fax 770-6223
Email: Dand@aleutian-housing.com
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

NATIVE VILLAGE OF AKUTAN DBA
AKUTAN TRIBAL COUNCIL and
ALEUTIAN HOUSING AUTHORITY,

      Plaintiffs,

vs.

                                    No. A05-284 CV

ALPHONSO JACKSON, SECRETARY OF
THE UNITED STATES DEPARTMENT
OF HOUSING AND URBAN
DEVELOPMENT, ET AL.,

      Defendants.

MOTION FOR STAY OF AGENCY ACTION AND MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

      Come now the plaintiffs, Native Village of Akutan dba

Akutan Tribal Council and Aleutian Housing Authority, and

hereby request a stay of agency action under 5 U.S.C. 705, or a

temporary restraining order and preliminary injunction pursuant

to FRCP 65, restraining and enjoining the defendants from

releasing or distributing all FY 2005 Indian Community

1

Development Block Grant (ICDBG) funds for Alaska. The

defendants should be required to withhold sufficient funds to

satisfy the plaintiffs' ICDBG application should they prevail

on the merits. This motion is more fully supported by the

accompanying Memorandum of Law and Affidavit of Daniel M.

Duame.

DATED December **5**, 2005.

_____
James F. Vollintine
Attorney for Plaintiff

_____
Daniel M. Duame
Attorney for Plaintiff

James F. Vollintine
P.O. Box 113329
Anchorage, AK 99511-3329
(907)346-4446; Fax 346-4898
Email: jfv@alaska.com
Attorney for Plaintiff

Daniel M. Duame
4000 Old Seward Highway, Suite 202
Anchorage, AK 99503
(907)563-2146; Fax 770-6223
Email: Dand@aleutian-housing.com
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

NATIVE VILLAGE OF AKUTAN DBA
AKUTAN TRIBAL COUNCIL and
ALEUTIAN HOUSING AUTHORITY,

    Plaintiffs,

vs.

ALPHONSO JACKSON, SECRETARY OF
THE UNITED STATES DEPARTMENT
OF HOUSING AND URBAN
DEVELOPMENT, ET AL.,

    Defendants.

No. A05-284 CV

CERTIFICATE OF COUNSEL
(Rule 65(b))

The undersigned counsel for plaintiffs hereby certifies

that on December 5, 2005 he contacted Dan Cooper, Esq.,

Assistant United States Attorney, and Gary Nemec, Esq., HUD's

Anchorage counsel, and informed them that the plaintiffs

intended to file a Motion for Stay of Agency Action and Motion

for Temporary Restraining Order and Preliminary Injunction at

10 a.m. on December 6, 2005. On December 5, 2005 the

undersigned also served Messrs. Cooper and Nemec with a copy of

the Complaint, Motion for Stay of Agency Action and Motion for

Temporary Restraining Order and Preliminary Injunction,

Memorandum of Law in support of said motion, and a proposed

Temporary Restraining Order and Preliminary Injunction.

DATED December _6_, 2005.

_____
James Vollintine
Attorney for Plaintiff

Certificate of Service
The undersigned hereby certifies
that he hand-delivered a copy of
this document to Dan Cooper, Esq.,
Assistant United States Attorney,
on December 6, 2005.

_____
James Vollintine

James F. Vollintine
P.O. Box 113329
Anchorage, AK 99511-3329
(907)346-4446; Fax 346-4898
Email: jfv@alaska.com
Attorney for Plaintiff

Daniel M. Duame
4000 Old Seward Highway, Suite 202
Anchorage, AK 99503
(907)563-2146; Fax 770-6223
Email: Dand@aleutian-housing.com
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NATIVE VILLAGE OF AKUTAN DBA AKUTAN TRIBAL COUNCIL and ALEUTIAN HOUSING AUTHORITY,<br><br>        Plaintiffs,<br><br>vs.<br><br>ALPHONSO JACKSON, SECRETARY OF THE UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, ET AL.,<br><br>        Defendants. | No. A05-284 CV |

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

INTRODUCTION

The plaintiffs, Native Village of Akutan dba Akutan Tribal

Council ("NVA") and Aleutian Housing Authority ("AHA"), request

a stay of agency action under 5 U.S.C. 705, or a temporary

restraining order and preliminary injunction pursuant to FRCP

65, restraining and enjoining the defendants from obligating or

1

distributing the entire FY 2005 Indian Community Development Block Grant (ICDBG) funds for Alaska, and requiring defendants to withhold sufficient funds to satisfy the plaintiffs' ICDBG application should they prevail on the merits of this action, and should HUD eventually approve their application.

## STATEMENT OF FACTS

On March 21, 2005 the United States Department of Housing and Urban Development ("HUD") issued a Notice of Funding Availability ("NOFA"), 70 Fed. Reg. 13654 (Mar. 21, 2005)(Ex.H),under Title I of the Housing and Community Development Act of 1974, 42 U.S.C. 5301 *et seq.* The NOFA invites Indian tribes to apply for grants to build housing and other community facilities for tribal members. The NOFA states that grant awards are subject to the ICDBG regulations in 24 CFR part 1003, and that $6,807,990 is available for distribution to Alaska's tribes (Ex.H-2,3).

On August 25, 2005 NVA filed an ICDBG application with HUD's Alaska Office of Native American Programs (Ex.G). The application seeks a $500,000 grant to build a 4-plex in Akutan for low-income tribal members. NVA designated AHA as its Community-Based Development Organization ("CBDO") under 24 CFR 1003.204(c) to carry out the project.

On November 2, 2005 defendant Donna Hartley denied NVA's application, stating that AHA did not meet the requirements for

a CBDO under 24 CFR 1003.204(c)(Ex.A-1). Ms. Hartley's decision included a copy of HUD's written review of the application which states that the rater "could not find sufficient evidence" that AHA qualified as a CBDO (Ex.A-4). Ms. Hartley's decision was issued without prior notice to NVA, and NVA was given no opportunity to clarify its application, submit additional information or arguments, or correct any perceived deficiencies.

NVA promptly requested reconsideration of Ms. Hartley's decision and sought a hearing or an opportunity to submit additional evidence (Ex.B,C). On November 23, 2005 defendant Wayne Mundy denied NVA's request (Ex.D). Mr. Mundy stated that NVA failed to submit sufficient documentation to establish that AHA qualifies as a CBDO, that the HUD Reform Act of 1989, 42 U.S.C. 3537a, prevented HUD from contacting NVA during the application process and that under the NOFA and regulations NVA has no further appeal rights within HUD.

The plaintiffs then filed this action alleging that HUD erred in denying NVA's application without prior notice and hearing, and without seeking clarification and giving it an opportunity to correct any perceived deficiencies. The plaintiffs seek a declaration that they submitted sufficient information for HUD to determine that AHA qualifies as a CBDO

under 24 CFR 1003.204(c), and that AHA qualifies as a CBDO as a matter of law there under.

In the present motion the plaintiffs seek a stay of HUD's decision and an order requiring it to withhold sufficient funds to satisfy NVA's application should NVA prevail on the merits herein and the Court requires HUD to continue processing its application.

                              ARGUMENT

Title 5 U.S.C. 705 provides in part as follows:

> On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings. (Emphasis added.)

The federal courts may stay administrative action in cases where it is likely that the plaintiff will prevail on the merits of the appeal, there will be irreparable injury to the plaintiff unless a stay is granted, the granting of a stay will not cause substantial harm to other interested persons, and the granting of a stay will not harm the public interest. Eastern Air Lines, Inc. v. CaB, 261 F.2d 830 (2nd Cir. 1958).

The test applied on a motion to stay agency action pending judicial review is the same as that applied to a motion for a preliminary injunction. Corning Sav. And Loan Ass'n v. Federal Home Loan Bank Bd., 562 F. Supp. 279, 280-81 (E.D. Ark. 1983). Whether to grant a stay of administrative proceedings or to issue injunctive relief is committed to the Court's sound discretion. Earth Island Institute v. U.S. Forest Service, 351 F.3d 1291, 1298 (9th Cir. 2003).

The Ninth Circuit has stated:

> Under the "traditional" criteria, a plaintiff must show "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." Alternatively, a court may grant the injunction if the plaintiff "demonstrates *either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in his favor." "These two alternatives represent 'extremes of a single continuum,' rather than two separate tests." "Thus, the greater the relative hardship to [the party seeking the preliminary injunction,] the less probability of success must be shown."

Earth Island Institute, 351 F.3d at 1297-98 (citations omitted, emphasis in original). Application of these factors to the facts of this case shows that temporary and preliminary injunctive relief is fully warranted.

A. Irreparable Injury. NVA will suffer irreparable injury if the defendants are not required to withhold sufficient funds to satisfy its ICDBG application should it prevail on the merits of this action. As stated in Daniel Duame's Affidavit (Exh. F-5), the defendants are on the verge of obligating and distributing all of the FY 2005 ICDBG funds for Alaska. In less than 2 weeks all of the money will be gone. Thus, if defendants are not enjoined, there will be no money for NVA if it prevails on the merits and this matter is remanded to HUD to continue processing its application.

B. No Harm to Other Interested Parties. Other interested parties are the other ICDBG applicants which HUD ranks in descending order of priority. Under the NOFA a total of $6,807,990 is available for distribution for eligible Alaskan tribal applicants (Ex.H-3). NVA's application seeks a grant of $500,000. It has narrowly tailored its motion to ask that HUD be required to hold back only enough funds to satisfy its application should it prevail on the merits herein, and should HUD eventually approve its application. HUD is free to obligate and distribute the remaining funds. Thus, the only other parties that will be affected by an injunction are 1 or 2 ICDBG applicants at the bottom of HUD's ranking list, and they will receive their funds if the plaintiffs do not prevail on the merits of this action.

6

C. No Harm to the Public Interest. In considering requests for injunctive relief "[t]he public interest inquiry primarily addresses impact on non-parties rather than parties." Sammartano v. First Judicial Court in and for the County of Carson City, 303 F.3d 959, 974 (9th Cir. 2002). As pointed out above, there would be little to no harm to non-parties by issuance of an injunction. At the most, only 1 or 2 ICDBG applicants would be affected. If the plaintiffs prevail, those applicants would not be entitled to the funds in any event; if the plaintiffs lose, those applicants' rights to the funds merely would be delayed.

Moreover, Counts IV and V of the Complaint allege that HUD violated the plaintiffs' constitutional due process rights. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." Sammartano, supra, 303 F.3d at 974, citing Cate v. Oldham, 707 F.2 1176, 1190 (11th Cir. 1983). (See plaintiffs' arguments at pp. 18-21 infra.)

D. Probability of Success on the Merits.

1. HUD's failure to recognize AHA's status as an eligible Community Based Development Organization (CBDO) was arbitrary, capricious and an abuse of discretion.

Under the Administrative Procedure Act ("APA"), 5 U.S.C. 706, the court is authorized to "compel agency action unlawfully withheld," and to set aside agency action that is

7

"unsupported by substantial evidence," or "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or that is "without observance of procedure required by law," or "contrary to constitutional right."

In Preston v. Schweiker, 555 F. Supp. 886 (D. Alaska 1983), aff'd, 734 F.2d 1359 (9th Cir. 1984), the plaintiffs alleged that the Secretary of Health and Human Services' failure to adopt Indian preference requirements under the Indian Preference Act constituted a continuing abuse of discretion. This court agreed, stating that "[a]n abuse of discretion under the APA may be found if the decision is based on an improper understanding of law." Id. at 892, citing Song Jook Suh v. Rosenberg, 437 F.2d 1098, 1102 (9th Cir. 1971).

Similarly, in Robert E. Derecktor of Rhode Island, Inc. v. Goldschmidt, 506 F. Supp. 1059 (D.R.I. 1980), the court held that the Coast Guard failed to comply with regulations governing the award of contracts for building ships. The court noted that agency regulations "have the force and effect of law" and that "the failure to comply with the regulations cannot be considered to be in accordance with law or in observance of procedure required by law, and, is therefore a violation of 5 U.S.C. 706(2)(A) and (D)." Id. at 1063, citing Bradley v. Weinberger, 483 F.2d 410, 414 n.2 (1st Cir. 1973).

8

NVA submits that HUD misapprehended and violated the requirements of 24 CFR 1003.204(c), 24 CFR 4.26 and the NOFA, and thus abused its discretion and failed to follow procedures required by law as required by the APA.

> a.   AHA is an eligible CBDO under 24 CFR 1003.204
> (c)(2)(iv) and (c)(3) as a Matter of Law.

In order for a tribal applicant such as NVA to be eligible for new housing construction funds under the Indian Community Development Block Grant ("ICDBG") program, it is required to partner with a "Community Based Development Organization" ("CBDO").  See 24 CFR 1003.204(a); Sec. IV(E)(1)(d) of NOFA (Ex.H-6). 24 CFR 1003.204(c) sets forth the definitional criteria that an entity must meet to qualify as a CBDO.  The criteria are relatively broad and inclusive and include a whole host of potential eligible entities.  The objective of this requirement seems to be to limit funding to those organizations that have an established track record for carrying out community development projects, including housing renovation or new development.  AHA has been building and renovating homes and other facilities for 30 years, primarily with funding provided through HUD.

NVA asserts that its designated CBDO, AHA, meets the eligibility criteria of *at least* two of the stated provisions

of 1003.204(c) - namely 204(c)(2)(iv) and 204(c)(3).  Section

1003.204(c)(2)(iv) provides as follows:

> (2) A CBDO that does not meet the criteria
> in paragraph (c)(1) of this section may also
> qualify as an eligible entity under this
> section if it meets *one* of the following
> requirements:
> . . . .
> (iv)    Is a tribal-based nonprofit
> organization.    Such organizations are
> associations or corporations duly organized
> to promote and undertake community
> development activities on a not-for-profit
> basis within an identified service area.
> (Emphasis added.)

AHA's charter, which is essentially Alaska Statute 18.55.996 -

*and which was provided as part of the application (Ex.G-4) -*

clearly states that:

> (1) AHA is a "*public* body corporate")(i.e., a
> non-profit entity - which status, it should
> be noted, has been recognized by the IRS); AS
> 18.55.996(b)

> (2) AHA is organized to "function in the
> operating area of the individual [regional]
> associations…"    (i.e.    within the
> Aleutian/Pribilof Islands "identified service
> area"); AS 18.55.996(b)

> (3) AHA was formed as a "regional *Native*
> (i.e., "tribally based,") housing authority"
> AS 18.55.996(d); and

> (4) The purpose of creating the housing
> authorities was to address the "acute
> shortage of housing and related facilities in
> the villages of the state and that adequate
> housing cannot be provided by the private
> sector due to economic depression that exists
> in most villages of the state." (i.e., that
> AHA was "duly organized to promote and

undertake community development activities on
a not-for profit basis. . ." AS 18.55.995.

It appears to be unquestionably clear that all  elements of the
stated definition of 1003.204(c)(2)(iv) are applicable to AHA
and all other similarly situated regional native housing
authorities organized under AS 18.55.996(b), and that AHA  is
therefore an eligible CBDO under the program.

In the event HUD *did* question AHA's status under
1003.204(c)(2)(iv), regulation 1003.204(c)(3) goes on to
provide a sort of "catch all" for organizations or entities
that may not technically meet the various criteria of
1003.204(c)(1) & (2), but are "sufficiently similar in purpose,
function and scope to those entities qualifying under
paragraphs (c)(1) or (2). . ."  Again, should HUD argue that
AHA does not qualify as a CBDO under 1003.204(c)(2)(iv)(i.e.,
as a non-profit), then given AHA's history, purpose and scope
of activities, not to mention its long-standing relationship as
an administrator of substantial HUD programs, services and
associated funding, it is simply beyond the realm of any
reasonable argument that AHA does not fit the "sufficiently
similar" definition.

In fact, HUD should be precluded as a matter of law from
arguing otherwise, or failing to recognize AHA as a CBDO, since
as recently as December of 2004 it recognized the Bristol Bay

Housing Authority as a CBDO under the same grant program and regulations in question (Ex.E-1).

Although the central issue in this case appears to turn on the issue of (1) whether AHA submitted sufficient information to HUD reviewers in its application for the reviewers to make the CBDO determination (which plaintiffs argue strenuously below was in fact the case); or (2) whether if not, HUD had an obligation to seek clarification of the issue.  The fact that HUD had already recognized a regional housing authority as a CBDO should automatically qualify all similarly situated housing authorities as CBDO's.  The statutorily created charters, purposes, functions and authorized activities are identical for Bristol Bay Housing Authority, Aleutian Housing Authority and all statutorily created housing authorities.  To recognize one is to recognize all.

     b.   <u>NVA submitted all required and necessary information for HUD to make a CBDO eligibility determination.</u>

HUD's November 23, 2005 denial of NVA's request for reconsideration states that NVA failed to provide sufficient documentation that AHA qualifies as a CBDO (Ex.D-2). NVA submits that this finding is unsupported by substantial evidence.

The documents required for a CBDO eligibility determination, *and requested by* HUD to make its CBDO

determination under 24 CFR 1003.204(c), were submitted with NVA's application (Ex.G-2).  NVA is at a total loss to explain how the HUD reviewers arrived at contrary determination. NVA should not be penalized because HUD's reviewer either failed to carefully read the documents, interpret the regulations, or somehow make the necessary connections between NVA's submittals and the regulations.

In the annual training for fiscal year 2005 carried out by HUD for prospective ICDBG grantees, HUD discussed the CBDO eligibility issue.  AHA had a staff person attend this training for the FY 2005 funding cycle. (Ex.F-4). HUD showed a PowerPoint presentation (Ex.I) in which one of the slides states that those wanting to demonstrate eligibility under the "sufficiently similar" criteria of 24 CFR 1003.204(c)(3) should do so "through submission of information regarding the *organization's charter and bylaws*, that it is sufficiently similar in purpose, function and scope to entities [described in (c)(1) & (2)]" (Ex.I-3). The next PowerPoint slide specifically states that ICDBG applicants may designate Regional Housing Authorities such as AHA as CBDOs (Ex.I-3):

> Applicant may assert that an RHA is an eligible CBDO as being sufficiently similar to Tribally-based CD Non-profit. Documentation should include:
> • Narrative Statement addressing
> -How it is tribally based (how, when, why & by whom created.

13

> -Show how those that created it are linked
> to by custom, tradition, geography etc.
> (Emphasis added.)

NVA specifically provided this precise information (Ex.G-3), and yet it was deemed insufficient. *This is despite the fact that AHA has had an established relationship with HUD for 30 years!* HUD is intimately familiar with the structure and operations of the Regional Housing Authorities, including AHA. Other than essentially writing a legal brief or making some type of extensive legal argument (beyond what was provided in the Narrative Statement of the application) as to how the submitted documents sufficiently tied AHA to the applicable CBDO definitions, NVA is at an absolute loss as to what it might have provided for additional information.

Given HUD's intimate familiarity with AHA's structure and operations, and given that in the last funding cycle HUD already recognized a similarly situated housing authority as a CBDO (Ex.E-1), and given that NVA had submitted all requested or required information, it was a gross abuse of discretion and a manifest inequity to reject NVA's application without any review on the merits. The action is especially egregious when the process HUD has established essentially has no right of administrative appeal or reconsideration, even when a gross error is brought to its attention.

c.  HUD violated 24 CFR 4.26(a)(1)and(b)(2), and Section V. 9(a) of the NOFA, and abused its discretion in unreasonably excluding NVA's application from being rated and ranked without contacting NVA to correct a perceived technical deficiency.

24 CFR Part 4, Subpart B – "Prohibition of Advance Disclosure of Funding Decisions" – sets forth a framework, which establishes both "permissible and impermissible disclosures" and contacts with applicants.[1]  Its purpose, of course, is to preclude giving an unfair advantage to applicants who might receive some information that other applicants would not.  See 24 CFR 4.20 (Purpose).  There is *not* however, an absolute bar of any kind on pre-award contacts; in fact the opposite is the case.

24 CFR 4.26 contemplates that there may in fact be a need for contacts with applicants during the selection process, and thus sets forth a framework for HUD responses to outside inquiries from applicants, and for HUD to *initiate* external contacts, where issues may arise on an applicants application which need clarification on technical issues – precisely the kind of issues involved with NVA's application.

24 CFR 4.26(b) states as follows:

An authorized employee, during the selection process, may contact an applicant for the purpose of:
•  •  •  •

---

[1] The regulations in 24 CFR Part 4 were adopted pursuant to the HUD Reform Act of 1989, 42 U.S.C. 3537a. HUD relied on the Act in its November 23, 2005 decision denying reconsideration (Ex. D-2).

1

      (2)Clarification    of    the    terms    of    the
applicant's application.    A clarification, for
2

the purpose of this paragraph (b), may include
3

a request for additional information consistent
with the    regulatory requirements.    (Emphasis
4

added.)

5    This regulation is mirrored in the NOFA at section V. 9(a)

6    (Ex.H-7):

7

      B.9. Technical    Deficiencies    and    Pre-Award
8    Requirements.

      (a)    *Technical Deficiencies*:    * * *  HUD may
9    not seek clarification of items or responses

that improve the substantive quality of your
10    response to any rating factor.    In order not

to  unreasonably  exclude  applications  from
11    being  rated  and  ranked,  HUD  may  contact

applicants to ensure proper completion of
12    the application and will do so on a uniform

basis for all applicants. (Emphasis added.)
13

14

15    In addition, 24 CFR 4.26(a)(1) provides in part that:

16

      The    term    "technical    assistance"    also
17    includes identification of those parts of an

application    that    need    substantive
18    improvement, but this term does not include

advising the application how to make those
19    improvements. (Emphasis added.)

20    These sections go to the heart of the plaintiffs' complaint.

21    HUD in fact knew with a high degree of likelihood, and NVA

22
   would argue certainty, that AHA is in fact an eligible CBDO.
23

24    There is no dispute over the documentation that NVA submitted

25    to verify AHA's eligibility.  As pointed out above, HUD

26    recognized a similarly situated Housing Authority as a CBDO in

27    the last cycle of ICDBG funding (Ex.E-1).

28

29

16

1    Most critically, if HUD had bothered to contact NVA for
2  clarification - which is argued strenuously above should not
3  have been necessary in the first place since all required and
4
5  necessary information was available - neither the contact from
6  HUD, nor any information which Plaintiff would have provided as
7  a result of the contact to clarify its argument for CBDO status
8  would have been relevant to the substantive rating or ranking
9
10  factors.  Plaintiff would have gained no unfair substantive
11  advantage, which is the only thing the statute and the
12  regulations seek to prevent.  In other words, CBDO status or
13  eligibility is not a factor which is rated in the competitive
14  review process.  No points are awarded for being a CBDO.
15
16    This was precisely the type of situation contemplated in
17  the regulations and the NOFA.  HUD had a duty to not
18  "unreasonably exclude [NVA's application] from being rated and
19  ranked."  NOFA V.B.9(a) (Ex.H-7).  HUD's decision not to
20  contact NVA under the facts and circumstances of this case is
21
22  particularly egregious in a process that attempts to bar any
23  and every avenue of appeal.  As argued below, the lack of due
24  process built into such a system creates a constitutionally
25  fatal flaw in the program.  NVA is entitled to have its
26
27  application rated and ranked when all the essential, required
28  application elements have been submitted to the agency.
29

## 2. HUD's Failure to Follow its Regulations Violated NVA's Due Process Rights.

The Fifth Amendment to the United States Constitution provides in part that "No person shall be...deprived of life, liberty or property without due process of law..." As pointed out above, HUD refused to recognize AHA as NVA's CBDO, rejected NVA's application without notice, without seeking clarification of the application, and without allowing NVA the opportunity to correct the alleged defects as required by the NOFA and 24 CFR 4.26(a)(1) and (b)(2).

In Montilla v. Immigration and Naturalization Service, 926 F.2d 162 (2d Cir. 1992), the INS failed to adhere to its own regulations regarding the right to counsel in a deportation proceeding. The Second Circuit stated that "[t]he notion of fair play animating [the Due Process Clause] precludes an agency from promulgating a regulation affecting individual liberty or interest, which the rule-maker may then with impunity ignore or disregard as it sees fit." Id. at 164.

The courts have long held that failure of an administrative agency to follow its own established procedures constitutes a violation of procedural due process. See, e.g., Berends v. Butz, 357 F. Supp. 143, 151 (D.C. Minn. 1973); Bills v. Henderson, 631 F.2d 1287, 1299 (6th Cir. 1980); Government of Canal Zone v. Brooks, 427 F.2d 346, 347 (5th Cir. 1970);

Associated Builders & contractors of Texas Gulf Coast, Inc. v. U.S. Dept. of Energy, 451 F. Supp. 281, 286 (D.C. Tex. 1978); Brown v. United States, 377 F. Supp. 530, 539 (D.C. Tex. 1974); United States v. Ginsburg, 376 F.Supp. 714, 717 (D.C. Conn. 1974). NVA submits that HUD's failure to follow its regulations violated NVA's right to due process of law.

   3. HUD's Rejection of NVA's Application Without
      Opportunity for Hearing or Opportunity to Submit
      Additional Evidence Violated NVA's Due Process Rights.

The plaintiffs submit that HUD's rejection of NVA's application without an opportunity for hearing or an opportunity to submit additional information violated its procedural due process rights.

HUD ignored NVA's due process arguments (Ex.C-1,2). As noted in HUD's decision, NVA has no administrative recourse or appeal rights from the summary denial of its application (Ex.D-2).

The crux of procedural due process is notice and an opportunity to be heard. Armstrong v. Manzo, 380 U.S. 545, 552 (1965). Courts have rejected the distinction between rights and privileges in determining whether a hearing is required before an agency may deny government benefits. The issue is whether the person has a sufficient "property interest" or "legitimate claim of entitlement" in or to the government benefit denied by the agency. Board of Regents v. Roth, 408 U.S. 564, 571 (1972).

In Goldberg v. Kelley, 397 U.S. 254 (1970), the court held that welfare applicants were entitled to hearings before denial of their applications. In Pence v. Kleppe, 529 F.2d 135, 140 (9th Cir. 1976), the court held that Alaska Natives were entitled to hearings before their allotment applications were rejected. See also, Devine v. Cleland, 616 F.2d 1080 (9th Cir. 1980).

In a case involving the right to a hearing before termination of social security benefits the United States Supreme Court stated:

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Governments' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Matthews v. Eldridge, 424 U.S. 319, 335 (1976).

There is no question that NVA has a valuable property interest at stake: the right to apply for the funds under the regulations, a "legitimate claim of entitlement" to the funds under the regulations, similar to the applicants in Goldberg and Pence whose rights arose under the statutes and regulations. HUD's policy to reject applications without

20

1   notice, hearing, or an opportunity to correct perceived

2   deficiencies even where a regulation sanctioned opportunity is

3   provided for, creates an extremely high risk of depriving ICDBG

4

5   applicants of their property rights.

6       Finally, it would not have been unduly burdensome for HUD

7   to contact NVA and request verbal clarification of its

8   application, or permit it to submit additional information and

9   evidence or to give it some kind of hearing before denying its

10

11  application. As pointed out above, the NOFA and 24 CFR

12  4.26(a)(1) and (b)(2) expressly authorize HUD to elicit further

13  information from ICDBG applicants and authorize applicants to

14  correct deficiencies in their applications. The plaintiffs

15

16  submit that HUD violated NVA's due process rights in rejecting

17  its application without giving it prior notice and an

18  opportunity to cure the alleged defect.

19                              CONCLUSION

20      For the foregoing reasons, the plaintiffs respectfully

21

22  request that Court grant their motion for a Temporary

23  Restraining Order and Preliminary Injunction.

24      DATED December __5__, 2005.

25

26                              James F. Vollintine
                                Attorney for Plaintiff
27

28                              Daniel M. Duame
29                              Attorney for Plaintiff

PLAINTIFFS' LIST OF EXHIBITS

A. Donna Hartley's November 2, 2005 Decision

B. NVA's November 8, 2005 Request for Reconsideration

C. NVA's November 18, 2005 Supplemental Request for Reconsideration.

D. Wayne Mundy's November 23, 2005 Decision on Reconsideration

E. HUD's November 29, 2005 Response to Freedom of Information Act Request

F. Affidavit of Daniel L. Duame

G. NVA's ICDBG Application for Federal Assistance

H. Notice of Funding Availability, March 21, 2005

I. HUD's PowerPoint presentation at ICDBG Grant Workshop